IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Jean Yves Brezilien, | ) | No. CV 05-3790-PHX-MHM (HCE) |
| | ) | |
| Plaintiff, | ) | **REPORT & RECOMMENDATION** |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| Phillip Crawford, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

Pending before the Court is Petitioner's *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (hereinafter "Petition").  (Doc. No.1) Pursuant to the Rules of Practice of this Court, this matter was referred to the undersigned Magistrate Judge for a Report and Recommendation.  (Doc. No.3) For the following reasons, the Magistrate Judge recommends that the District Court grant Petitioner's Petition for Writ of Habeas Corpus unless the Government within 60 days of the District Court's order provides Petitioner a hearing before an Immigration Judge with the power to either grant him bail or order him detained if the Government establishes that he is a flight risk or will be a danger to the community.

## I.     Factual & Procedural Background

Petitioner is a native of Haiti.  (Answer, Ex. 9)  He was paroled into the United States on or about March 19, 1992 at or near Jackson, Mississippi.  (Answer, p.2 & Ex. 1,9)  In

September 1993, Petitioner was granted political asylum as of June 12, 1993. (Answer, p.2, Ex. 2) In 1994, Petitioner's status was adjusted to that of a lawful permanent resident.[1] (Answer, p.2 & Ex. 3,4)

On or about October 26, 2000, Petitioner was convicted in Arizona state court of "'Attempted Aggravated Assault,' a class 5 felony, in violation of Arizona Revised Statute...sections 13-1204(A)(11), 13-1204(B), 13-1203(A)(1), 13-1001, 13-3601(A), 13-701, 13-702, 13-702.10, and 13-801." (Answer, p. 2 & Ex. 5)

On July 5, 2003, Petitioner applied for admission as a returning lawful permanent resident at the international airport in Miami, Florida. (Answer, p.2 & Ex. 6) A computer check revealed that Petitioner had a criminal record, and due to that information he was ordered to appear in person for a deferred inspection in Phoenix, Arizona. (Id.)

On August 15, 2003, the Department of Homeland Security, formerly the Immigration and Naturalization Service (hereinafter "DHS"), served Petitioner with a Notice to Appear at a removal proceeding, charging that Petitioner was subject to removal pursuant to: section 212(a)(2)(A)(i)(I) of the Immigration and Nationality Act, codified at 8 U.S.C. § 1182(a)(2)(A)(i)(I), in that he was an alien who had been convicted of, or who admitted having committed, or who admitted committing acts which constituted the essential elements of a crime involving moral turpitude (other than a purely political offense) or an attempt or conspiracy to commit such a crime. (Answer, p.2 & Ex. 7)

On August 22, 2003, Petitioner appeared before the Immigration Court in Florence, Arizona for a scheduled master calendar hearing. He requested and was granted additional time to obtain an attorney. (Answer, p.3) His case was continued to September 4, 2003. (Id.) At the September 4, 2003 hearing, Petitioner appeared *pro se,* admitted the allegations and charge contained in the Notice to Appear, and informed the court that he would apply for

---

[1]At that time, Petitioner was residing in Phoenix, Arizona.

cancellation of removal under INA section 240A(a). (Id.) His case was adjourned until September 18, 2003. (Id.)

On September 18, 2003, Petitioner appeared with an attorney and the matter was continued to October 2, 2003. (Id.) On October 2, 2003, Petitioner through counsel informed the court that he would apply for political asylum, withholding of removal, and protection under the Convention Against Torture (hereinafter "CAT"). (Id.; *see also* Ex. 9) A merits hearing was scheduled for November 18, 2003, but at Petitioner's request, the hearing was reset to December 10, 2003. (Answer, p.3)

Petitioner's merits hearing commenced on December 10, 2003 and concluded on December 17, 2003. (Id.) On December 17, 2003, the Immigration Judge (hereinafter "IJ") granted Petitioner's request for political asylum and withholding of removal. (Id. & Ex. 10) The DHS reserved appeal. (Id.) On September 8, 2004, the Board of Immigration Appeals (hereinafter "BIA") sustained the DHS' appeal and remanded Petitioner's case to provide him with the opportunity to demonstrate whether changed country conditions in Haiti qualified him for political asylum, withholding of removal, or protection under the CAT. (Answer, p. 3 & Ex. 11)

On December 16, 2004, after a hearing, the IJ again granted Petitioner's request for political asylum and withholding of removal. (Answer, Ex. 12) The DHS reserved appeal. (Answer, p.3.) On November, 21, 2005, the BIA sustained DHS' appeal, vacated the IJ's decision, and remanded Petitioner's case "for consideration of other relief for which the [Petitioner] may be eligible, such as under" the CAT. (Answer, Ex. 13)

On December 8, 2005, the IJ granted Petitioner's request for a continuance. (Answer, p. 4)

On November 22, 2005, Petitioner filed the instant Petition seeking relief under 28 U.S.C. § 2241.

On January 25, 2006, Petitioner's application for protection under the CAT and request to re-apply for political asylum and withholding of removal came on for hearing

before the IJ.  (Id.)  The IJ granted Petitioner deferral of removal under the CAT but denied Petitioner's requests to re-apply for political asylum and withholding of removal.  (Id. & Ex. 14) Both Petitioner and the Government appealed.  (Answer, p.4) On June 15, 2006, the BIA dismissed Petitioner's appeal and sustained the Government's appeal.  (Id. & Ex. 16)

On July 25, 2006, Petitioner filed an appeal of the BIA's decision with the Ninth Circuit Court of Appeals.  *Brezilien v. Keisler,* No. 06-73693 (9th Cir. *filed* July 25, 2006) Upon filing the appeal, a temporary stay of removal was entered.  *Id.* On February 27, 2007 Petitioner's motion for a stay of removal was granted.  *Id.*   The appeal remains pending.

## II.    DISCUSSION

### A.    Argument

Petitioner raises two grounds for relief.  First, Petitioner contends that the Attorney General lacks authority to detain him given that he is not subject to an order of removal. Second, Petitioner asserts that he never had a bond hearing despite his request for such a hearing pursuant to 8 U.S.C. § 1226(a)(2)(A).

Respondent asserts that Petitioner was an arriving alien into the United States when he arrived at the international airport in Miami, Florida; he was rendered inadmissible by his October 2000 conviction;  and, thus, his detention is authorized by 8 U.S.C. § 1226(c).

### B.    Jurisdiction

The federal habeas corpus statute authorizes district courts to grant relief where the petitioner is in custody in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2241(c)(3).  Specifically, the Supreme Court has held that section 2241 confers jurisdiction upon the federal courts to consider cases involving statutory and constitutional challenges to both pre- and post-removal detention of aliens in deportation proceedings.  *See Demore v. Kim*, 538 U.S. 510 (2003); *Zadvydas v. Davis*, 533 U.S. 678 (2001).

- 4 -

C.    Analysis

Petitioner argues that he cannot be detained without an order of removal.  Petitioner is correct that when he filed the instant Petition in November 2005, he was not subject to a final order of removal.  Instead, the IJ had granted relief and Petitioner remained detained pending the Government's appeal.  However, contrary to Petitioner's assertion that he cannot be detained in the absence of a removal order, 8 U.S.C. § 1226(a) provides in pertinent part that "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."  8 U.S.C. §1226(a); *see also Kim* 538 U.S. 510 (The apprehension, detention and release of aliens in *pending* administrative proceedings is governed by 8 U.S.C. § 1226).  Consequently, Petitioner's first ground for relief fails.

After Petitioner filed the instant Petition, the BIA subsequently vacated the IJ's grant of protection under the CAT and remanded the matter "so that the Immigration Judge may enter a final order of removal." (Answer, Ex. 16) Although the final order of removal is not in the record, the record supports the conclusion that such order was entered given that the Ninth Circuit granted a stay of removal.   Because the Ninth Circuit has stayed the Immigration Court's removal order, 8 U.S.C. §1226 continues to govern this action.  *See* 8 U.S.C. § 1231(a)(1)(B)(ii).

Petitioner cites section 1226(a) which provides that an alien detained pursuant to that section may be released on bond of at least $1,500 together with conditions of release prescribed by the Attorney General.  8 U.S.C. §1226(a)(2)(A).  He asserts that he never received a bond hearing despite his request for such a hearing. However, the statute excludes several categories of aliens from the bond provision of section 1226(a)(2)(A) and instead requires that aliens falling into the excluded categories "be taken into custody...", *i.e.,* mandatorily detained.  8 U.S.C. §1226(c); *see also* 8 U.S.C. §1226(a) (expressly excluding aliens listed in subsection (c) from applicability).  Among aliens excluded from the bond provision of 1226(a)(2)(A) is  "any alien who...is inadmissible by reason of having committed  any  offense  covered  in  [8  U.S.C.]  section  1182(a)(2)...."    8  U.S.C.

§1226(c)(1)(A); *see also* 8 U.S.C. §1226(a)  In cases involving aliens falling within section 1226(c)(1)(A), the Attorney General may release such alien

> only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding.

8 U.S.C. § 1226(c)(2).   Respondents argue that Petitioner is an "inadmissible alien" under 8 U.S.C. §1226(c)(1)(A) and as such is not entitled to a bond determination.  (Answer, p.7)

Although Petitioner's status in the United States was adjusted in 1994 to that of a lawful permanent resident, Respondent contends that Petitioner's status changed to that of an "arriving alien"[2] on July 5, 2003 when he applied for admission to the United States as a returning lawful permanent resident at the Miami international airport.  (Id. at pp. 4-7) Respondent is correct.   An alien, like Petitioner, who has been lawfully admitted for permanent residence "shall not be regarded as seeking an admission into the United States for purposes of the immigration laws *unless* the alien...has committed an offense identified in section 1182(a)(2) of this title,..."  8 U.S.C. § 1101(a)(13)(C)(v) (emphasis added). Section 1182(a)(2)(A)(i)(I) renders inadmissible "any alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of...a crime involving moral turpitude (other than a purely political offense) or an attempt or conspiracy to commit such a crime." 8 U.S.C. §1182(a)(2)(A)(i)(I).   Consequently, under applicable immigration statutes, Petitioner is considered an "inadmissible alien."  *See* 8 U.S.C. 1101(a)(13)(C)(v), 1182(a)(2)(A)(i)(I).

---

[2]"The term arriving alien means an applicant for admission coming or attempting to come into the United States at a port-of-entry,..." 8 C.F.R. §1.1(q).

Furthermore, the fact that Petitioner was permitted to enter the United States for deferred inspection in 2003 does not alter the conclusion that his status is that of an inadmissible alien.  When Petitioner arrived at the port of entry at the Miami international airport, he was not admitted.  *(See* Answer, Ex. 6)   Instead, he was paroled into the United States for deferred inspection.  (Id.)  Parole into the United States does not constitute admission.  8 U.S.C.  1101(a)(13)(B) ("An alien who is paroled under section 1182(d)(5) of this title...shall not be considered to have been admitted); *Barney v. Rogers,* 83 F.3d 318, 320 n.1 (9th Cir. 1996) ("Parole is a legal fiction whereby an alien is allowed to be physically present in the United States for a specific purpose.  The alien is not deemed to have 'entered' the United States as that term is defined in 8 U.S.C. § 1101(a)(13)...").  Thus, Respondent is correct that Petitioner's detention falls within section 1226(c)(1)(A): he is an alien who "is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title."  8 U.S.C. §1226(c)(1)(A).

The Ninth Circuit has "interpret[ed] the authority conferred by section 1226(c) as applying to expedited removal of criminal aliens."  *Tijani v. Willis,* 430 F.3d 1241, 1242 (9th Cir. 2005). *See also Kim,* 538 U.S. at 529-531 (footnote omitted) ("The Executive Office for Immigration Review has calculated that, in 85% of the cases in which aliens are detained pursuant to section 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days" and the Court found that "the detention at stake under section 1226(c) lasts roughly a month and a half in the vast majority of cases...and about five months in the minority of cases in which the alien chooses to appeal" to the BIA).  In *Tijani,* the court  held that detention of a lawful permanent resident alien under section 1226 that lasted over two years and eight months was not expeditious. *Id.*  ("[W]e interpret the authority conferred by section 1226(c) as applying to expedited removal of criminal aliens.  Two years and eight months of process is not expeditious; and the foreseeable process in this court, where the government's brief in [the petitioner's] appeal of the removal was only filed last month after two extensions of time, is a year or more.")  The court, therefore, remanded the

- 7 -

matter "to the district court with directions to grant the writ unless the government within 60 days of this order provides a hearing to [the petitioner] before an Immigration Judge with the power to grant him bail unless the government establishes that he is a flight risk or will be a danger to the community." *Id.*

Petitioner was taken into custody in the summer of 2003.[3] He has been in custody for over four years. Almost three years of that time was spent in proceedings before the IJ and the BIA. Moreover, the appeal to the Ninth Circuit filed in 2006 has yet to be fully briefed. The record reflects a few instances wherein Petitioner requested a continuance of the proceedings before the IJ. Respondent has not indicated whether the Government required additional time during the proceedings before either the IJ or the BIA. Although the *Tijani* court noted that the government had requested two extensions on appeal before the Ninth Circuit, the court did not premise its decision on whether extensions had been requested and by whom. Under the instant circumstances, where Petitioner's case has been pending for over four years, his process has not been expeditious and section 1226(c) no longer authorizes his detention. *Tijani,* 430 F.3d at 1242; *see also. Ali v. Crawford,* 2007 WL 1670165 (D.Ariz. June 8, 2007) ("Although it did not necessarily occur as the result of 'an unreasonable delay by the INS in pursuing and completing deportation proceedings,' the Court finds that detention for a period of four years is by reason of the sheer length of time unreasonable and no longer justified. It is not the 'expedited removal,' required by *Tijani.*") (emphasis omitted); *Singh v. Crawford,* 2007 WL 2237637 (August 3, 2007) ("Section 1226(c) no longer authorizes [the petitioner's]... detention" which had lasted approximately two years and five months).

---

[3]Respondent states that Petitioner was apprehended at the Miami international airport on July 5, 2003. (Answer, p.6) He was referred to Phoenix immigration offices for deferred inspection. (Answer, Ex. 6) On August 15, 2003, Petitioner was served with a Notice to Appear. (Answer, Ex. 7) An August 15, 2003 Record of Deportable/Inadmissible Alien reflects that Petitioner was apprehended at the Miami airport on July 5, 2003 and "is to be mandatorily detained." (Answer, Ex. 8)

Respondent argues that *Tijani* "does not apply because [P]etitioner is an arriving alien...a unique and separate class." (Answer, p. 7) The Supreme Court has rejected a similar argument with regard to the application of the post-removal detention statute, 8 U.S.C. § 1231(a)(6).[4]   *Clark v. Martinez*, 543 U.S. 371 (2005).   The question in *Clark* concerned whether the construction of section 1231(a)(6) that was applied to *removable* aliens in *Zadvydas* "applies as well to...the category of aliens 'ordered removed who are *inadmissible* under [§] 1182.'" *Id.* at 378 (quoting 8 U.S.C. § 1231(a)(6)) (emphasis added).  The Court held that "because the statutory text provides for no distinction between admitted and nonadmitted aliens, we find that it results in the same answer." *Id.* at 379 (footnote omitted); *see also Id.* at 378 ("The operative language of §1231(a)(6), 'may be detained beyond the removal period,' applies without differentiation to all three categories of aliens that are its subject.")

By arguing that section 1226(c) should apply differently to Petitioner because Petitioner is an inadmissable alien instead of a deportable alien, as was *Tijani*, Respondent urges the Court to treat some detentions authorized by the same statute differently from others, depending upon the status of the detainee. Section 1226(c) identifies four categories of aliens who "[t]he Attorney General shall take into custody...": 1) aliens who are inadmissable by reason of having committed any offense covered in 8 U.S.C. §1182(a)(2); 2) aliens who are deportable by reason of having committed an offense covered in section 8 U.S.C. §1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D); 3) aliens who are deportable under 8 U.S.C. §1227(a)(2)(A)(i) on the basis of an offense for which the alien has been sentenced to a term of imprisonment of at least a year; or 4) aliens who are inadmissible under 8 U.S.C. §1182(a)(3)(B) or deportable under 8 U.S.C. §1227(a)(4)(B).  8 U.S.C. §1226(c)(1)(A)-(D).

---

[4]While 8 U.S.C. §1226 governs detention of aliens in pending administrative proceedings, section 1231 governs detention and release of aliens when a final order of removal has been entered after completion of administrative removal proceedings. *Zadvydas*, 533 U.S. at 683  (referring to section 1231 as the "post-removal-period detention statute").

Thus, the operative language of section 1226(c), *i.e.* "[t]he Attorney General shall take into custody any alien who...", applies without differentiation to all four categories of aliens listed therein. *Id.* "[B]ecause the statutory text provides for no distinction between admitted and nonadmitted aliens...", *Clark,* 543 U.S. at 379, Petitioner's status as an inadmissible alien does not negate application of *Tijani.* Petitioner's detention of over four years and counting is not authorized under section 1226(c). *See Tijani,* 430 U.S. at 1242. Petitioner must be afforded a hearing before an immigration judge with the power to grant him bail unless the Government establishes he is a flight risk or will be a danger to the community. *See id.*

## III.   RECOMMENDATION

For the foregoing reasons, the Magistrate Judge recommends that the District Court grant the Petition for Writ of Habeas Corpus (Doc. No. 1) unless the Government within 60 days of the District Court's order provides Petitioner a hearing before an Immigration Judge with the power to either grant him bail or order him detained if the Government establishes that he is a flight risk or will be a danger to the community. Failure to provide such hearing will result in release of Petitioner.

Pursuant to 28 U.S.C. §636(b), any party may serve and file written objections within ten days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within ten days after being served with a copy thereof. Fed.R.Civ.P. 72(b). If objections are filed, the parties should use the following case number: **CV 05-3790-PHX-MHM.**

If objections are not timely filed, then the parties' right to *de novo* review by the District Court may be deemed waived. *See United States v. Reyna-Tapia,* 328 F.3d 1114, 1121 (9th Cir) (*en banc*), *cert. denied,* 540 U.S. 900 (2003).

DATED this 23rd day of October, 2007.

Héctor C. Estrada
United States Magistrate Judge